DEPARTMENT OF TRANSPORTATION v ROBINSON

DEPARTMENT OF TRANSPORTATION v MIDWAY CYCLE, INC

DEPARTMENT OF TRANSPORTATION v MORTON

Docket Nos. 126338, 126339, 127148. Submitted November 5, 1991, at Lansing. Decided April 20, 1992, at 9:10 A.M. Leave to appeal sought in *Morton.*

The Michigan Department of Transportation brought condemnation actions in the Eaton Circuit Court against Richard L. Robinson and Elaine M. Robinson; Midway Cycle, Inc., and Harley Davidson of Lansing, Inc.; and Doris G. Morton and Vinylast, Inc., seeking to acquire property needed for the construction of an interstate highway. Following a jury verdict against the Robinsons, and settlements in the remaining actions, the court, Richard M. Shuster, J., awarded the Robinsons, Midway Cycle, and Harley Davidson expert witness fees paid to their appraiser. The court also awarded Morton and Vinylast attorney fees equivalent to one third of the difference between the department's initial written offer and the amount for which the parties ultimately settled the action. The department filed separate appeals from the awards, claiming that they were excessive. The appeals were consolidated.

The Court of Appeals *held:*

1. The department failed to preserve for appellate review allegations underlying its claims that the awards of expert witness fees were excessive when it failed to raise those allegations in the trial court.

2. Section 16 of the Uniform Condemnation Procedures Act, MCL 213.66; MSA 8.265(16), limits an award of attorney fees to no more than one third of the amount by which the ultimate award exceeds the condemnor's written offer for the property before filing its complaint for condemnation, and requires the trial court to determine the reasonableness of the fees. In the

REFERENCES

Am Jur 2d, Eminent Domain §§ 465, 467, 473, 476.
See the Index to Annotations under Eminent Domain.

action against Morton and Vinylast, the complaint for condemnation was preceded by two written offers that were based on different valuation methods. While both offers could have served as the basis for determining the maximum attorney fees allowable under § 16, the trial court did not abuse its discretion in determining that the award should be based on the initial written offer, which was lower, rather than the subsequent offer. The trial court's award of attorney fees was consistent with the purposes of § 16.

Affirmed.

EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — ATTORNEY FEES.

Attorney fees are awarded pursuant to the Uniform Condemnation Procedures Act to place the property owner in as good a position as that occupied before the taking, to impose a penalty for a condemnor's low offer for the property, and to provide a performance incentive to the property owner's attorney (MCL 213.66; MSA 8.265[16]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Ronald F. Rose,* Assistant Attorney General, and *James J. Kobza,* Special Assistant Attorney General, for the Department of Transportation.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Kurt D. Hassberger*), for Richard L. Robinson and Elaine M. Robinson.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Kurt D. Hassberger*) (*Gregory J. Guggemos,* of Counsel), for Midway Cycle, Inc., and Harley Davidson of Lansing, Inc.

*Hubbard, Fox, Thomas, White & Bengston, P.C.* (by *Gregory J. Guggemos*), and *Farhat, Tyler & Associates, P.C.* (by *Joseph A. Farhat, III*), for Doris G. Morton and Vinylast, Inc.

Before: MacKenzie, P.J., and Sullivan and
G. S. Allen,* JJ.

Sullivan, J. These consolidated appeals involve
awards of expert witness and attorney fees in
condemnation proceedings initiated by the Michi-
gan Department of Transportation for the con-
struction of Interstate 69 between Lansing and
Charlotte. Compensation was determined in each
case through either trial or settlement. Plaintiff
appeals as of right from circuit court orders
awarding defendants Richard and Elaine Robinson
$14,586 for their appraiser's expert witness fees;
defendants Midway Cycle, Inc., and Harley David-
son of Lansing, Inc., $35,543.75 for their apprais-
er's expert witness fees; and defendants Doris G.
Morton and Vinylast, Inc., $132,363.47 for their
attorney fees. We affirm each of the orders.

### I. EXPERT WITNESS FEES

In *Dep't of Transportation v Robinson,* Docket
No. 126338, a jury awarded defendants $25,000 for
one condemned parcel and $160,000 for another.
In *Dep't of Transportation v Midway Cycle, Inc,*
Docket No. 126339, a jury awarded defendants
$1,162,572 for their property and business. The
trial court set aside that verdict on defendants'
motion for a new trial, and this Court denied leave
to appeal. On the eve of retrial, the parties settled
the claim for $1,664,863. Following the verdict in
*Robinson* and the settlement in *Midway Cycle,*
defendants moved to recover amounts incurred for
appraisal fees under MCL 213.66(1); MSA 8.265(16)
(1). After a consolidated hearing, the circuit court
found that the fees were reasonable and awarded

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

defendants the full amounts claimed. Plaintiff claims that the fees are excessive and unreasonable and that the court abused its discretion. We disagree.

Plaintiff waived its claims that the fees improperly included (1) the appraiser's consultations with the defendants' attorneys to prepare them for trial and to cross-examine plaintiff's witnesses and (2) unnecessary time in the courtroom. Such charges ordinarily would not be assessable against plaintiff. *Detroit v Lufran Co,* 159 Mich App 62, 67; 406 NW2d 235 (1987). Plaintiff, however, failed to raise these objections in the trial court. It complained that the fees were excessive, but failed to direct the court's attention to the specific excesses now urged. Objections raised on one ground are insufficient to preserve an appellate attack based on different grounds. *People v Michael,* 181 Mich App 236, 238; 448 NW2d 786 (1989). During the fee hearing, plaintiff's attorney cross-examined defendants' appraiser extensively; he never asked the purpose either of the consultations with defense attorneys or of the appraiser's presence in the courtroom throughout the trial. We will not speculate on or further tax judicial resources to explore questions that plaintiff had every opportunity to pursue below.

Plaintiff also argues that both the rate and the total time billed were excessive and that there was duplication of effort. The trial court expressly found that both the rate and the overall time charged were reasonable. We find no clear error in this record.

## II. ATTORNEY FEES

In *Dep't of Transportation v Morton,* Docket No. 127148, plaintiff's agent met with defendants on

July 29, 1986. There was a dispute in the testimony with regard to whether the agent discussed possible alternative offers with the owners at that meeting. In any event, he made a written offer on that date of $776,180, which included the purchase price of the realty and the cost of moving equipment and fixtures ("detach-reattach"). Defendants rejected the offer and retained an attorney. On March 25, 1987, plaintiff sent defendants a written offer of $1,019,332 for the real property and trade fixtures ("value-in-place"). Defendants rejected that offer, claiming that plaintiff failed to include some of the fixtures in the appraisal. Plaintiff filed the complaint on April 13, 1987. Ultimately, the parties settled on a mixed detach-reattach and value-in-place compensation amount, plus interest, for an "ultimate award" of $1,173,270.42.

Defendants moved for reimbursement of attorney fees under § 16 of the Uniform Condemnation Procedures Act (UCPA), MCL 213.66; MSA 8.265(16), which provides in part as follows:

> (3) If the amount finally determined to be just compensation for the property acquired exceeds the amount of the written offer as defined in section 5, the court shall order reimbursement in whole or in part to the owner by the agency of the owner's reasonable attorney's fees, but not in excess of ⅓ of the amount by which the ultimate award exceeds the agency's written offer as defined by section 5. The reasonableness of the owner's attorney's fees shall be determined by the court.

Defendants claimed that the "written offer as defined by section 5" in this case was the initial offer, made by plaintiff's agent, in the amount of $776,180. They calculated the attorney fee as $132,363.47, that is, one-third of $397,090.42 (the difference between $1,173,270.42 and $776,180).

Plaintiff contended that the base offer under the statute was the last offer made before the filing of the complaint, that is, $1,019,332. Defendants would, therefore, be entitled to no more than $51,312.81, that is, one-third of $153,938.42 (the difference between $1,173,270.42 and $1,019,332). The circuit court agreed with defendants and ordered plaintiff to reimburse defendants for attorney fees in the amount of $132,363.47.

The statute requires attorney fees to be reasonable. *Detroit v J Cusmano & Son, Inc,* 184 Mich App 507, 512; 459 NW2d 3 (1989). An award of attorney fees will be upheld unless the trial court abused its discretion in determining the reasonableness of the fees. *Id.,* pp 512-513. There is no question in this case with regard to the amount of the "ultimate award." Nor has plaintiff claimed that the fee award was unreasonable. The sole question is whether the court erred in using the initial offer as the "written offer as defined in section 5" in calculating the fee. We hold that the circuit court was correct under the facts of this case.

Section 5(1) of the UCPA, MCL 213.55(1); MSA 8.265(5)(1), describes "written offer" as follows:

> Except as provided in section 25(4), before initiating negotiations for the purchase of property, the agency shall establish an amount which it believes to be just compensation for the property and promptly shall submit to the owner a good faith offer to acquire the property for the full amount so established. The amount shall not be less than the agency's appraisal of just compensation for the property.

The written offer to be used as the fee base under § 16(3) must be made before the agency files its condemnation complaint. *Bay City v Surath,* 170

Mich App 139, 145; 428 NW2d 9 (1988). A good faith offer under § 5 must include the lesser of either the appraised detach-reattach costs of the movable trade fixtures or their value in place. *In re Acquisition of Land for the Central Industrial Park Project,* 127 Mich App 255, 261; 338 NW2d 204 (1983).

Both offers in this case were "written offer[s] as defined by section 5" and each was based on plaintiff's appraisals made before it commenced suit. The first was based on the appraised detach-reattach costs, the second on value in place. The question, then, is which one should have been used as the fee base in this case.

The ucpa does not expressly contemplate multiple precomplaint offers, and there are no cases directly on point. We are guided by the following principles of statutory construction, summarized in *Wills v Iron Co Bd of Canvassers,* 183 Mich App 797, 801-802; 455 NW2d 405 (1990):

> Where a statute is clear and unambiguous, judicial construction or interpretation is precluded. However, if construction is warranted, this Court is obliged to determine and give effect to the intention of the Legislature and assign words their ordinary, normally accepted meaning. When determining legislative intent, statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished. An act must be read in its entirety, giving due consideration to all sections so as to produce, if possible, a harmonious and consistent enactment of the whole. Finally, statutes are to be construed to avoid absurd or unreasonable consequences. [Citations omitted.]

Section 16 of the ucpa defines a limit on fees, not a formula that must be followed in every case. Under the predecessor statute the limit was $100.

MCL 213.383; MSA 8.261, repealed by MCL 213.76; MSA 8.265(26), effective April 1, 1983. The Legislature liberalized the attorney fee provision in the UCPA in order to reimburse owners for expenses incurred as a result of agency actions. House Legislative Analysis, HB 4652, June 19, 1980.

This Court has identified three purposes of the attorney fee provision. First, awarding attorney fees will assure that the property owner receives the full amount of the award, placing the owner in as good a position as that occupied before the taking. *J Cusmano & Son, Inc, supra,* p 511; *Bay City, supra,* p 143; *Dep't of Transportation v DiMatteo,* 136 Mich App 15, 17-18; 355 NW2d 622 (1984). Second, the fee structure penalizes agents of a condemnor for deliberately low offers because a low offer may result in the condemnor paying the owner's litigation expenses as well as its own. *J Cusmano & Son, Inc,* p 511; *Bay City,* p 144. This Court has disapproved the practice of an agency attempting to bind an owner to a low offer and then revising its offer just before filing suit in order to minimize attorney fees. *Dep't of Transportation v Pichalski,* 168 Mich App 712, 720-721; 425 NW2d 145 (1988). Third, the fee provision provides a performance incentive to the owner's attorney, because the fee awarded is directly proportional to the results achieved by counsel. *DiMatteo, supra.* The result generated by counsel was also central to the related question of what constitutes the "ultimate award," the second factor in the attorney fee calculation. *In re Condemnation of Lands,* 133 Mich App 207, 212; 349 NW2d 261 (1984). The Court held that interest on the judgment should be included in the ultimate award, "as such was the product of the attorney's efforts." *Id.,* p 214.

Using the initial offer as the base figure for computing fees was reasonable in this case and

served the legislative purposes of the statute. The owners hired the attorneys with that offer on the table, and the court's finding that the attorneys accepted the case on the basis of that offer is not clearly erroneous. MCR 2.613(C). Thus, awarding fees based on that amount will assure the owners full compensation. The trial court in this case did not suggest, nor do we, that plaintiff deliberately attempted to minimize attorney fees by making a last-minute, precomplaint revision in the offer. The court did note, however, that the initial offer reflected the agency's choice to offer only the lesser detach-reattach amount. The record shows that defendants' attorneys were instrumental in raising that offer to the ultimate award realized by defendants in this case. We see no abuse of discretion in the court's determination that, under the circumstances, the fee was reasonable.

Plaintiff contends that language in *Bay City, supra,* pp 145-146, suggests a contrary result. The Court in *Bay City* speculated that if a new § 5 offer had been made before suit was filed, there might have been no fee award. Plaintiff argues that it presented both awards at the initial meeting and put the detach-reattach offer in writing because defendants said that was their choice.[1] Plaintiff claims that because it submitted the value-in-place offer in writing before filing suit, *Bay City* controls and the second offer should be treated as the base for the fee award.

The language on which plaintiff relies was dicta and the issue presented here was not before the Court in *Bay City*. We do not, however, suggest

[1] Doris Morton testified that plaintiff's agent did not present the higher offer at the initial meeting. The trial court did not resolve the conflict in the testimony, finding that the written offer controlled. We agree with the trial court that whether the agent discussed value in place as an alternative at the initial meeting does not affect the outcome under these circumstances.

that the initial offer need always be the offer upon which attorney fees must be based under § 16(3). The statute leaves it to the sound discretion of the trial court to determine if a fee is reasonable under the circumstances. We only hold that, in this case, using the initial offer as the base resulted in a reasonable fee that did not exceed the statutory maximum.

Affirmed.